UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X
                                                                     :
ROMAN BRIK,                                                          :
                                                                     :
                              Plaintiff,                            :
                                                                     :                23-cv-4330 (LJL)
             -v-                                                     :
                                                                     :                OPINION AND ORDER
JUDGE MARGO K. BRODIE,                                               :
                                                                     :
                              Defendant.                            :
                                                                     :
---------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

        Plaintiff Roman Brik ("Plaintiff") bring this action *pro se* seeking a declaratory judgment

or, in the alternative, injunctive relief, determining that Rule 50.3.1(e)(2) of the Guidelines for

the Division of Business Among District Judges ("Local Rule"),[1] which requires assignment of

subsequent actions brought in the United States District Court for the Eastern District of New

York by *pro se* plaintiffs to the same judge who presided over the earlier cases, be declared to be

unconstitutional as a violation of his due process and equal protection rights.  Dkt. No. 1.

Defendant Margo K. Brodie, Chief Judge of the United States District Court for the Eastern

District of New York, now moves to dismiss the complaint, pursuant to Federal Rule of Civil

Procedure 12(b)(6), for failure to state a claim for relief.  For the following reasons, the motion

to dismiss is granted.

## BACKGROUND

        Plaintiff is a *pro se* litigant.  He is also a repeat litigant.  He challenges the

constitutionality of the Eastern District of New York's local rule that provides that all civil

---
[1] The applicable rule is now Rule 3 in the Rules for the Division of Business for the Eastern
District of New York, effective September 25, 2023.

actions filed by the same *pro se* litigant are deemed related to one another and assigned to the judge with the first-filed case.  Specifically, Plaintiff alleges that he repeatedly made complaints to Chief Judge Brodie that the local rule was "blatantly unconstitutional," but that his requests were ignored. Dkt. No. 1 ¶ 6.  Plaintiff complains that beyond her "disdainful disregard" of his request, Chief Judge Brodie exercises "woefully deficient oversight over her courthouse."  *Id.* ¶ 7.

The present action arises from Plaintiff's efforts to sue state court judges and court officers in connection with their decisions regarding custody over his children.[2]  On September 27, 2021, Brik filed a complaint in the United States District Court for the Eastern District of New York against Judge DeLizzo of the Richmond County Family Court in Staten Island, New York, alleging that his constitutional rights and those of his children were violated when he was denied custody and visitation rights of the children.  *See Brik v. DeLizzo*, CM-ECF 21-cv-5353, Dkt. No. 1.  The case was assigned to the Honorable Ann M. Donnelly, United States District Judge.  On October 6, 2021, Judge Donnelly issued a memorandum and order dismissing Plaintiff's complaint without prejudice on the grounds that Judge DeLizzo was entitled to absolute judicial immunity.  Dkt. No. 5.  Judge Donnelly granted Plaintiff leave to amend his complaint, but reminded Plaintiff to "include in the amended complaint all the necessary information to support his claims."  *Id.* at 4.  On November 15, 2021, Plaintiff filed an amended complaint, substituting the Richmond County Family Court for Judge DeLizzo as the defendant, and alleging that his constitutional right to trial by jury protected by the Sixth and Seventh Amendments to the United States Constitution as well as the New York State Constitution and the New York Civil Practice Law and Rules ("CPLR") were violated when he was denied

---

[2] *See Brik v. Stroutsovsky*, Nos. V-1268-20/20A & V-1269-20/20A.

custody without a jury trial.  Dkt. No. 7.  On December 22, 2021, Judge Donnelly dismissed the complaint with prejudice on the alternative grounds that the Richmond County Family Court was immune from suit in federal court under the Eleventh Amendment and that, in any case, there exists no constitutional right to jury trial in a state-court, child-custody case.  Dkt. No. 9 at 2–3. On November 14, 2022, the Second Circuit dismissed Plaintiff's appeal of Judge Donnelly's order by mandate on the grounds that the appeal lacked an arguable basis either in law or in fact. Dkt. No. 13.

Less than two weeks after he filed suit in *Brik v. DeLizzo*, on October 7, 2021, Plaintiff filed another complaint in the Eastern District of New York, this time against Judge Janet L. McFarland of the Richmond County Family Court.  *See Brik v. McFarland*, CM-ECF 21-cv-5626, Dkt. No. 1.  Plaintiff alleged that Judge McFarland, to whom the child-custody case was assigned after Judge DeLizzo, had violated his constitutional rights and those of his children in connection with the child custody dispute.  *Id.*  The suit against Judge McFarland was assigned to Judge Donnelly pursuant to Rule 50.3.1(e)(2).  Before the case moved forward, Plaintiff filed a notice of voluntary dismissal on October 13, 2021.  Dkt. No. 5.

On May 5, 2023, Plaintiff filed a third complaint in the Eastern District of New York, raising claims against Judge McFarland a second time, as well as her court officer, identified as "Lavanco."  *Brik v. McFarland*, CM-ECF 23-cv-3507, Dkt. No. 1.  Plaintiff alleged that Judge McFarland had deprived him of, *inter alia*, his constitutional free speech and jury rights, *id.* ¶¶ 2, 16–17, and that Lavanco had violently assaulted him at Judge McFarland's direction when Plaintiff attempted to attend an *ex parte* hearing in the case, *id.* ¶ 1.  The case was again assigned to Judge Donnelly pursuant to Rule 50.3.1(e)(2).  Plaintiff moved for Judge Donnelly to recuse herself on grounds that she had exhibited personal bias in his lawsuit against Judge DeLizzo.

Dkt. No. 4.  Plaintiff also filed on the docket a letter addressed to Chief Judge Brodie, contending that Rule 50.3.1(e)(2) was unconstitutional and urging her to change the rule.  Dkt. No. 6.  Chief Judge Brodie responded that she did "not have the authority to make rulings or otherwise take any action" in the case as it was not assigned to her.  Dkt. No. 7.  On June 29, 2023, Judge Donnelly issued an order denying Plaintiff's motion for recusal and dismissing Plaintiff's complaint.  Dkt. No. 9.  Judge Donnelly ruled that Plaintiff had not identified any basis for recusal, noting that previous adverse rulings were was insufficient.  *Id.* at 4–7.  And she directly addressed Plaintiff's complaint that all of his cases were assigned to her pursuant to the Local Rule:

> The plaintiff seems to suggest that the Court sought out his cases.  The Court assures the plaintiff that it did not seek out his cases.  Rather, the Court was assigned his cases pursuant to Local Rule 50.3.1(c), which requires that "all *pro se* civil actions filed by the same individual" are deemed related "[i]n the interest of judicial economy," and therefore be assigned to the same district judge and magistrate judge.  That is why the Court has been assigned to preside over the plaintiff's cases—because he is a *pro se* litigant whose filings are deemed related.

*Id.* at 6.[3]

Judge Donnelly also dismissed the claims against Judge McFarland on the basis of absolute judicial immunity, and against Lavanco for failure to state facts regarding the alleged assault.  *Id.* at 7–9.[4]  Judge Donnelly granted Plaintiff leave to amend his complaint as to Officer

---

[3] Plaintiff also alleges that Judge Donnelly has conflicts of interest and is biased against him. Dkt. No. 1 ¶ 3.  The Court has already dismissed the claims against Judge Donnelly.  In any case, this claim is properly raised before Judge Donnelly in a motion for recusal, *see* 28 U.S.C. §§ 144, 455, and is reviewable on appeal by the Second Circuit, *see, e.g.*, *LoCascio v. United States*, 473 F.3d 493, 495 (2d Cir.) (per curiam), *cert. denied*, 552 U.S. 1010 (2007).

[4] On a motion to dismiss, the Court may consider "matters of which judicial notice may be taken, such as legislative facts, and adjudicative facts, such as publicly filed decisions of this and other courts." *J.L. v. E. Suffolk Boces*, 113 F. Supp. 3d 634, 645 (E.D.N.Y. 2015) (internal citations and quotation marks omitted); *see also Abadi v. Am. Airlines, Inc.*, 2024 WL 1345437, at *6 n.7 (S.D.N.Y. Mar. 29, 2024).

Lavanco, but determined that any amendment as to Judge McFarland would be futile due to her immunity from suit. *Id.* at 10. The case, proceeding only against Lavanco, remains pending.

The instant lawsuit was filed in the Eastern District of New York on June 9, 2023. Dkt. No. 1. Plaintiff alleges that Local Rule 50.1.3(c), pursuant to which all *pro se* cases filed by the same individual plaintiff are deemed related and assigned to the judge with the first-filed case, deprives Plaintiff of his substantive and procedural due process rights, and to the equal protection of laws. *Id.* ¶¶ 5, 8, 13–14. He alleges that the Rule denies him the right to "an impartial, randomly assigned federal judge." *Id.* ¶ 14. Plaintiff alleges that he made "repeated requests to Chief Judge Brodie to exercise her authority . . . to review and repeal the blatantly unconstitutional rule brutally forcing unrepresented Americans into a 'marriage' with a judge, who, like in Donnelly's case, is deeply enmeshed with the defendant state apparatus paying her and her former colleagues, and who are mired in obvious conflict of interest." *Id.* ¶ 6. Although Chief Judge Brodie responded at least once to Plaintiff's concerns regarding the Local Rule, Plaintiff contends that his requests "were compliantly ignored." *Id.*[5] Plaintiff alleges that beyond her "disdainful disregard" of Plaintiff's "respectful demands," "Chief Judge Brodie also seems to exercise woefully deficient oversight over her courthouse." *Id.* ¶ 7.

## PROCEDURAL HISTORY

On June 9, 2023, Plaintiff, again proceeding *pro se*, instituted this action against Chief Judge Margo K. Brodie and Judge Ann M. Donnelly of the Eastern District of New York. Dkt. No. 1. Plaintiff sought declaratory and injunctive relief declaring that the Defendants' conduct was unlawful and violated Plaintiff's constitutional rights. *Id.* at 4. On June 16, 2023, the

---

[5] *See Koulkina v. City of New York*, 559 F. Supp. 2d 300, 314 (S.D.N.Y. 2008) (explaining that a court is under no obligation "to reconcile [a *pro se*] plaintiff's own pleadings that are contradicted by other matter asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint").

undersigned was designated as a visiting judge of the Eastern District of New York to perform the duties of a United States District Judge in connection with this case pursuant to 28 U.S.C. § 292(b).  Dkt. No. 3.[6]

On July 6, 2023, the Court issued an order dismissing Plaintiff's complaint as against Judge Donnelly for failure to state a claim on grounds of judicial immunity.  Dkt. No. 5 at 2–3.[7] The Court explained that, although "[j]udicial immunity does not bar a claim for prospective injunctive and declaratory relief," *id.* at 2 (quoting *Shtrauch v. Dowd*, 651 F. App'x 72, 73 (2d Cir. 2016) (summary order)), because Plaintiff did "not seek to remedy a harm that [was] truly prospective" as to Judge Donnelly, he was not entitled to declaratory relief, *id.* at 3.

Defendant Chief Judge Brodie, represented by the United States Attorney's Office for the Eastern District of New York, filed the instant motion to dismiss on November 1, 2023.  Dkt. No. 15.  On January 26, 2024, Plaintiff filed his opposition to the motion.  Dkt. No. 20.  On February 14, Defendant filed her reply in support of the motion to dismiss.  Dkt. No. 24.

---

[6] Contrary to Plaintiff's allegations, Dkt. No. 1 ¶ 8, the United States District Court for the Southern District of New York does not have a local rule similar to that of the Eastern District, *see* S.D.N.Y. Local Rule 4.

[7] Contrary to Plaintiff's contention, Dkt. No. 20 at 1, the Court in no way addressed the merits of Plaintiff's claims as to Chief Judge Brodie in its July 6 decision.  In simply stated that "Plaintiff seeks a declaration that assignment of *pro se* cases, under the Rules for the Division of Business for the Eastern District of New York, violates his constitutional rights."  Dkt. No. 5 at 3.

**LEGAL STANDARD**

Plaintiff principally contends that Defendant violated his rights guaranteed by the Due Process and Equal Protection Clauses of the Fourteenth Amendment.[8]   Dkt. No. 1.  Defendant asserts that the complaint fails to state a claim for relief, contending that Local Rule 50.1.3(c) passes constitutional muster, and that, to the extent that the complaint is founded upon the allegations that she acted with "disdainful disregard" and exercises "woefully deficiency oversight over her courthouse," is barred by the doctrine of absolute judicial immunity.  Dkt. No. 15.

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555, 557.  The ultimate question is whether "[a] claim has facial plausibility, [*i.e.*,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common

---

[8] Because Plaintiff takes issue with the actions of a federal, not state, court, his due-process claim is properly pursued under the Due Process Clause of the Fifth Amendment, not the Fourteenth Amendment.  *See, e.g.*, *Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'").  The method of analysis as to Fifth Amendment due-process and equal-protection claims is the same as the one employed in Fourteenth Amendment due-process and equal-protection cases.  *See, e.g.*, *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 217 (1995).

sense." *Id.* at 679.  Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

The Court construes *pro se* pleadings broadly and liberally, interpreting them so as to raise the strongest arguments they suggest.  *See Abbas v. Dixon*, 40 F.3d 636, 639 (2d Cir. 2007); *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000).  However, while the Court construes *pro se* pleadings liberally, *pro se* plaintiffs are not relieved of the requirement that they plead enough facts to "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  Nor does it relieve them of the obligation to otherwise comply with the pleading standards set forth by the Federal Rules of Civil Procedure.  *See Saidin v. N.Y.C. Dep't of Educ.*, 498 F. Supp. 2d 683, 687 (S.D.N.Y. 2007).  "Thus, the Court's 'duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it.'"  *Davila v. Lang*, 343 F. Supp. 3d 254, 266 (S.D.N.Y. 2018) (quoting *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009)).

## DISCUSSION

Even on the more lenient standard under which the Court reviews *pro se* filings, Plaintiff's complaint fails to state a claim upon which relief can be granted.  Plaintiff can establish neither an equal-protection violation nor a due-process violation against Defendant in her official capacity.[9]

The rule challenged by Plaintiff here addresses the assignment of related cases and distinguishes between those cases filed by individuals proceeding *pro se* and those filed by

---

[9] Plaintiff's suit cannot be maintained against Defendant in her personal capacity because the acts complained of concern Defendant's role as Chief Judge of the District Court for the Eastern District of New York.  *See, e.g.*, *Mireles v. Waco*, 502 U.S. 9, 9–10 (1991).

counsel.  Where cases have been judicially determined to be related, they are assigned to the judge presiding over the first-filed case in the series of related cases.  Local Rule 3(c).  With respect to cases that are not filed *pro se*, Rule 3 provides: "A civil case is 'related' to another civil case . . . when, because of the similarity of facts and legal issues or because the cases arise from the same transaction or events, a substantial saving of judicial resources is likely to result from assigning both cases to the same District and/or Magistrate Judge," with the caveat that "[a] civil case shall not be deemed 'related' to another civil case merely because the civil case involves identical legal issues or the same parties."  Local Rule 3(a).  Subsection (d), however, provides an exception to this general principle:

> In the interest of judicial economy, the following categories of civil cases shall be deemed to be "related" without further order of the court: (1) all habeas corpus petitions filed by the same petitioner; and (2) all pro se civil actions filed by the same individual.

Local Rule 3(d).  And "[i]t is a judge's duty to decide all cases within his jurisdiction that are brought before him."  *Pierson v. Ray*, 386 U.S. 547, 554 (1967); *see also In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1314 (2d Cir. 1988), *cert. denied*, 490 U.S. 1102 (1989) ("A judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is."); *see also* Model Code of Judicial Conduct, Canon 3(A)(2).[10]

---

[10] The Eastern District has taken steps not required by law to assist *pro se* litigants, including a legal assistance project that provides free legal services to *pro se* litigants who cannot afford an attorney.  The Eastern District also offers on its website forms for various filings to streamline and assist *pro se* litigants.  United States District Court for the Eastern District of New York, Forms, https://www.nyed.uscourts.gov/forms/all-forms/prose_forms.  And the Court provides a manual for *pro se* litigants appealing certain agency decisions.  United States District Court for the Eastern District of New York, Manuals for Self-Represented Parties, https://www.nyed.uscourts.gov/manuals-self-represented-parties.  These actions, all intended to help *pro se* litigants, arguably bespeak a lack of impermissible animus against *pro se* litigants.

Six other district courts employ similar rules.[11]  They include: the Western District of New York, *see* Dkt. No. 15-1 at 15 ("All cases filed by a *pro se* plaintiff/petitioner shall be assigned to the same District Judge and Magistrate Judge to whom the last case previously filed by the same plaintiff/petitioner had been assigned."); the Eastern District of Pennsylvania, *id.* at 23 ("Newly filed cases are related to a prior filed civil case if they . . . are filed by the same *pro se* individual as an earlier numbered suit, other than a habeas or social security action."); the Western District of Pennsylvania*, id.* at 26–27 ("All *pro se* civil rights actions by the same individual shall be deemed related."); the District of Columbia, *id.* at 31 ("[A] case filed by a *pro se* litigant with a prior case pending shall be deemed related and assigned to the judge having the earliest case."); the District of South Carolina, *id.* at 34 ("New cases filed by *pro se* litigants with prior cases shall, if possible, be assigned to the magistrate judge and district judge to whom the prior case was assigned unless the prior case was assigned as a related case."); and, to some extent, the District of New Jersey (requiring cases filed by repeat *pro se* and counseled litigants to be assigned to the judge presiding over the first-filed case in certain circumstances), *id.* at 20. These rules have been challenged in at least three cases and those challenges have been rejected. *See Doyle v. Arete Fin. Grp. LLC*, 2022 WL 17253587, at *2 (D.N.J. Nov. 28, 2022); *Coulter v. Studeny*, 2012 WL 2830029, at *2 (W.D. Pa. July 10, 2012); *Sibley v. Obama*, 819 F. Supp. 2d 45, 51 (D.D.C. 2011).  The Court finds the reasoning of those cases to be compelling, and reaches the same conclusion.

---

[11] The fact that the practice is not widespread among district courts is not indicative of its constitutionality as Plaintiff appears to suggest.  *See, e.g.*, *Coulter v. Studeny*, 2012 WL 2830029, at *2 (W.D. Pa. July 10, 2012).

## I.      Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that no state may

"deny to any person within its jurisdiction the equal protection of its laws."  U.S. Const. amend.

XIV, § 1.  The Fifth Amendment does not itself contain a guarantee of equal protection, but

instead incorporates, as against the federal government, the Equal Protection Clause of the

Fourteenth Amendment.  *See, e.g.*, *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954).  Regardless of

whether the claim is brought under the Fifth or the Fourteenth Amendment, the equal-protection

guarantee is the same—it "requires that the government treat all similarly situated people alike."

*Harlen Assocs. v. Incorporated Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001).  At the

same time, however, equal protection "does not require that all persons be dealt with identically,

but it does require that a distinction made have some relevance to the purposes for which the

classification is made."  *Kwong v. Bloomberg*, 723 F.3d 160, 169 (2d Cir. 2013) (quoting

*Baxstrom v. Herold*, 383 U.S. 107, 111 (1966)).

### A.      Suspect Classification

Unless a law or rule utilizes a classification that is inherently invidious because it

disadvantages a suspect class, or because it infringes upon the exercise of a fundamental right, a

reviewing court will exercise "only a limited review power," in which the court will "uphold

forms of state action under the Equal Protection Clause so long as the classification at issue bears

some rational relationship to a legitimate state interest."  *Hayden v. Paterson*, 594 F.3d 150, 169

(2d Cir. 2010) (citing *Plyler v. Doe*, 457 U.S. 202, 216–17 (1982)); *see also Nordlinger v. Hahn*,

506 U.S. 1, 10 (1992).  "On the other hand, where a suspect class . . . is at issue" or a

fundamental right is burdened, a court must "apply a more searching form of scrutiny."  *Hayden*,

594 F.3d at 169.  Accordingly, "the threshold question for any analysis under the Equal

Protection Clause is whether the highly deferential rational basis review applies, or instead

whether the legislation involves a suspect class or a fundamental right resulting in the application of a stricter form of scrutiny." *Id.*

On its face, Rule 50.1.3(c) does not burden any individual on the basis of membership in a suspect class. A suspect class is one "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 28 (1973). Repeat *pro se* litigants do not have such a history. They have not, for example, "been subjected to unique disabilities on the basis of stereotyped characteristics not truly indicative of their abilities." *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 313 (1976). Nor is *pro se* status an "immutable" quality beyond the class members' control. *Lyng v. Castillo¸* 477 U.S. 635, 637 (1986) (considering whether group "exhibit obvious, immutable, or distinguishing characteristics that define them as a discrete group"). Thus, "[u]nlike classifications based on race, alienage, national origin, and gender, *pro se* litigants have never been regarded as a suspect class. Consequently, statutes and rules which single out *pro se* litigants do not warrant strict or even intermediate scrutiny." *Posr v. Dolan*, 2003 WL 22203738, at *4–5 (S.D.N.Y. Sept. 23, 2003); *see also Wolfe v. George*, 486 F.3d 1120, 1126 (9th Cir. 2007) ("Frequent pro se litigants are not a suspect class meriting strict scrutiny."); *Guy v. Tex. Bd. of Pardons & Paroles*, 2023 WL 2596039, at *3 (E.D. Tex. Jan. 17, 2023) ("[P]ro se status is not a protected class."); *Larson v. Goodman*, 2010 WL 4537932, at *1 (D. Minn. Nov. 3, 2010) ("No court has recognized, for the purposes of a constitutional claim, a suspect class consisting of *pro se* litigants."); *Melnitzky v. HSBC Bank USA*, 2007 WL 1159639, at *9 (S.D.N.Y. Apr. 18, 2007); *Grundstein v. Ohio*, 2006 WL 3499990, at *7 (N.D. Ohio Dec. 5, 2006) ("*Pro se* litigants are not a suspect class."); *Liptak v. Banner*, 2002 WL 378454, at *5

(N.D. Tex. Mar. 7, 2002) ("[P]ro se litigants do not constitute a suspect class for purposes of equal protection."); *see also Posr v. Ct. Officer Shield No. 207*, 180 F.3d 409, 419 (2d Cir. 1999); *O'Reilly v. N.Y. Times Co.*, 692 F.2d 863, 867 (2d Cir. 1982) (Friendly, J.).

### B.   Fundamental Right

The Local Rule also does not burden any fundamental right.  While the Constitution guarantees all citizens [persons] meaningful access to the courts to provide some effective vindication through judicial relief for some wrong, *Christopher v. Harbury*, 536 U.S. 403, 414–15 (2002), non-random case assignment of subsequent actions brought by repeat *pro se* litigants does not burden that right.  "A plaintiff's constitutional right of access to the courts is violated where government officials obstruct legitimate efforts to seek judicial redress." *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 90 (2d Cir. 2017) (quoting *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 397 (2d Cir. 2008), *cert. denied*, 556 U.S. 1104 (2009)).  "'[W]hen government officials thwart vindication of a claim by violating basic principles that enable civil claimants to assert their rights effectively,' an unconstitutional deprivation of a cause of action occurs." *Whalen v. County of Fulton*, 126 F.3d 400, 406–07 (2d Cir. 1997) (alteration in original) (quoting *Barrett v. United States*, 798 F.2d 565, 575 (2d Cir. 1986)).  In forward-looking claims, "plaintiffs may allege that 'systemic official action' frustrated their ability to file a suit." *Sousa v. Marquez*, 702 F.3d 124, 127 (2d Cir. 2012) (quoting *Christopher*, 536 U.S. at 413).  In a backward-looking claim, "[t]he official acts claimed to have denied access may allegedly have caused the loss or inadequate settlement of a meritorious case." *Christopher*, 536 U.S. at 414.

Plaintiff can state neither a forward-looking claim nor a backward-looking claim.  "[T]he essence of the [forward-looking] access claim is that official action is presently denying an opportunity to litigate for a class of potential plaintiffs." *Christopher*, 536 U.S. at 413.

13

Backward-looking claims cover "specific cases that cannot now be tried (or tried with all material evidence)" due to actions of government officials. *Id.* at 413–14. The Local Rule does not presently, nor has it operated in the past, to prevent *pro se* plaintiffs, including Plaintiff here, from bringing their claims. A *pro se* plaintiff's first action in the Eastern District is assigned to a judge at random, and the subsequent assignment of Plaintiff's cases to the same judge does not violate Plaintiff's constitutional rights. *Sibley*, 819 F. Supp. 2d at 51. The right of access is distinct from the right to a randomly assigned judge, as courts have made clear. Litigants do not have a constitutional or statutory right to a randomly assigned judge.[12] *See, e.g.*, *United States v. Pearson*, 203 F.3d 1243, 1256 (10th Cir. 2000); *In re Atamian*, 247 F. App'x 373, 374 (3d Cir. 2007). Through 28 U.S.C. Section 137, which provides that "[t]he business of a court having more than one judge shall be divided among the judges as provided by the rules and orders of the court," Congress has granted broad discretion to the federal district courts in the assignment of cases to particular judges. *Pearson*, 203 F.3d at 1256; *United States v. Diaz*, 189 F.3d 1239, 1243–45 (10th Cir. 1999).[13] In light of this discretion, a number of courts have concluded that a litigant "does not have a right to have his case heard by a particular judge," *see Sinito v. United States*, 750 F.2d 512, 515 (6th Cir. 1984); *Fitzgerald v. Withrow*, 292 F.3d 500, 503 (6th Cir. 2002), that he "has no right to any particular procedure for the selection of the judge," *Cruz v. Abbate*, 812 F.2d 571, 574 (9th Cir.1987), and that he does not enjoy "the right to have [the] judge selected by a random draw," *Sinito*, 750 F.2d at 515; *United States v. Gallo*, 763 F.2d

---

[12] This is not to say that judge-shopping by parties is permissible. *See, e.g.*, *Cruz v. Abbate*, 812 F.2d 571, 572 (9th Cir. 1987); *Francolino v. Kuhlman*, 224 F. Supp. 2d 615, 630–31 (S.D.N.Y. 2002).

[13] But even if this were not the case, "judges have inherent power to administer the business of the courts in an orderly way." *Levine v. United States*, 182 F.2d 556, 559 (8th Cir.1950), *cert. denied*, 340 U.S. 921 (1951).

1504, 1532 (6th Cir. 1985), *cert. denied*, 475 U.S. 1017 (1986); *Francolino v. Kuhlman*, 224 F.

Supp. 2d 615, 635 (S.D.N.Y. 2002), *aff'd*, 365 F.3d 137 (2d Cir. 2004); *see also United States v.*

*Khatiwala*, 2024 WL 1050839, at *5 (D. Md. Mar. 11, 2024) (noting that while "random

assignment promotes confidence in the judicial system," there may "be countervailing policies

that, at times, override that principle").  The Rule here is not denying access to the courts.

### C.    Rational Basis Review

Having found neither suspect classification nor imposition on a fundamental right, the

Court applies rational basis review to Plaintiff's equal protection claim.  "Rational basis review

requires the [government] to have chosen a means for addressing a legitimate goal that is

rationally related to achieving that goal." *Clementine Co., LLC v. Adams*, 74 F.4th 77, 90 (2d

Cir. 2023) (quoting *Kane v. De Blasio*, 19 F.4th 152, 166 (2d Cir. 2021)).  A government

decision "to make a particular classification 'may be based on rational speculation unsupported

by evidence or empirical data.'" *United States v. Amalfi*, 47 F.4th 114, 124 (2d Cir. 2022)

(quoting *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993)).  Rather, on rational basis

review, the challenged law or policy "bear[s] a strong presumption of validity," *id.* (quoting

*Beach Commc'ns*, 508 U.S. at 314), and "[t]he burden is on the one attacking the legislative

arrangement to negative every conceivable basis which might support it," *Lehnhausen v. Lake*

*Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973) (quoting *Madden v. Kentucky*, 309 U.S. 83, 88

(1940)).

Rule 50.1.3(c) readily satisfies rational basis review.  *Pro se* litigants are differently

situated than counseled litigants.  *See, e.g.*, *Grays v. Auto Mart USA, LLC*, 2022 WL 2763096, at

*4 (10th Cir. July 15, 2022).  They frequently are not schooled in the law.  They receive benefits

that counseled litigants do not receive.  For example, courts are required to construed *pro se*

pleadings broadly and liberally, to raise the strongest arguments they suggest.  *See Abbas*, 40

15

F.3d at 639; *Cruz*, 202 F.3d at 597.  The Second Circuit has instructed that "[i]mplicit in the right to self-representation is an obligation . . . to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).  *Pro se* parties are owed obligations not owed to counseled litigants, including that they receive special notice when a party moving to dismiss under Federal Rule of Civil Procedure 12(b)(6) relies on matters outside the pleadings, *see* Local Civil Rule 12.1, and when a represented party moves for summary judgment, *see* Local Civil Rule 56.2.  And while *pro se* litigants are, like attorneys, subject to sanctions for misconduct, "pro se parties are afforded greater leniency in considering whether or not to impose Rule 11 sanctions," *Smith v. Educ. People, Inc.*, 233 F.R.D. 137, 13 n.9 (S.D.N.Y. 2005), as courts "may 'consider the special circumstances of litigants who are untutored in the law,'" *Simpson v. Putnam Cnty. Nat'l Bank of Carmel*, 112 F. Supp. 2d 256, 258 (S.D.N.Y. 2000) (quoting *Maduakolam v. Columbia Univ.*, 866 F.2d 53, 56 (2d Cir. 1989)), and will "put the pro se litigant on notice that his or her practice is sanctionable" before imposing a sanction, *Baasch v. Reyer*, 827 F. Supp. 940 (E.D.N.Y. 1993).  Because *pro se* litigants can only represent themselves and, by extension, their own interests, *see, e.g.*, *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998); *Pridgen v. Andresen*, 113 F.3d 391, 393 (2d Cir. 1997), they also lack the distance from a case and therefore may lack the objectivity and detachment from the case that an attorney may bring, *see, e.g.*, *Pitts v. Vaughn*, 679 F.2d 311, 313 (3d Cir. 1982).

There is a rational basis for the Local Rule—the judge to whom the prior matter was assigned will be more familiar with the *pro se* litigant, and vice versa.  The Local Rule functions to funnel *pro se* litigants to the judge with whom they are most familiar and who is most familiar with them, and thus furthers efficient case management, in which the courts have a clear interest.

*See, e.g.*, *Winegard v. New Media Inv. Grp., Inc.*, 2020 WL 5015361, at *5 (E.D.N.Y. 2020). Assigning later-filed cases of a *pro se* litigant to the judge who was randomly assigned to the litigant's first-filed matter may serve the interests of judicial efficiency—familiarity with a *pro se* plaintiff's history and general level of legal sophistication may well help judges sift through a plaintiff's claims to identify meritorious assertions. *Doyle*, 2022 WL 17253587, at *2; *Kaufman v. Kaye*, 2005 WL 1923561, at *4 (E.D.N.Y. Aug. 11, 2005) ("The assignment of a plaintiff's cases to certain [judges] is perfectly reasonable because the [judges] know the underlying facts of the cases and can more quickly dispose of a plaintiff's motion.").[14]   And the rule may also benefit repeat *pro se* litigants directly by ensuring that the plaintiff gets assigned to the judge whose individual practices and general case administration practices they are most familiar.  *See, e.g.*, *Doyle*, 2022 WL 17253587, at *2; *Sibley*, 819 F. Supp. 2d at 51 (denying plaintiff's motion for random reassignment of a case that argued that a rule substantially similar to the Local Rule violated due process and equal protection guarantees); *Coulter*, 2012 WL 2830029, at *2 (holding that "Plaintiff's constitutional rights have not been violated by the existence or application of" a rule substantially similar to the Local Rule).[15]

---

[14] Plaintiff's actions in this Court are a good example of this principle—each of Plaintiff's claims concerned the same underlying child custody dispute at various stages of the litigation.  The Court's familiarity with the underlying child custody dispute was likely helpful in addressing Plaintiff's claims.

[15] Plaintiff cannot assert a selective enforcement or "class of one" equal protection claim.  For one, he does not allege that repeat litigants who were represented by counsel were treated more favorably—that is, that there was discrimination at all.  *See, e.g.*, *Coulter*, 2012 WL 2830029, at *2.  He also does not allege that he was treated differently from others similarly situated or that such differential treatment "was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person."  *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995) (quoting *FSK Drug Corp. v. Perales*, 960 F.2d 6, 10 (2d Cir. 1992)) (selective enforcement).  He also does not allege that "[1] that [h]e has been intentionally treated differently from others similarly situated and [2] that there is no rational basis for the difference in treatment."  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564

## II.     Procedural Due Process

The Due Process Clause of the Fifth Amendment protects persons against deprivations of life, liberty, or property without due process of law.  U.S. Const. amend. V.  Individuals who seek to invoke the procedural protection of the Clause "must establish that one of these interests is at stake."  *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012).  To state a claim under the Due Process Clause, a plaintiff must show the existence of a constitutionally protected right and that the deprivation of that right lacked sufficient process.  *See, e.g.*, *Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir. 1994); *Woe v. Spitzer*, 571 F. Supp. 2d 382, 387 (E.D.N.Y. 2008).  Procedural due process analysis accordingly proceeds in two steps: first, the court considers "whether there exists a liberty or property interest of which a person has been deprived, and if so," the court asks, at the second step, "whether the procedures followed . . . were constitutionally sufficient." *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016) (quoting *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011)).

Plaintiff does not assert that that he is deprived of a constitutionally protected interest by the administration of the Local Rule.  Nor would such an allegation be persuasive.  Courts have the power to prescribe rules governing the administration of cases.  28 U.S.C. § 2071; Fed. R. Civ. P. 83(a); *Frazier v. Heebe*, 482 U.S. 641, 645 (1987) ("[A] district court has discretion to adopt local rules that are necessary to carry out the conduct of its business."); *Pappas v. Philip Morris, Inc.*, 915 F.3d 889, 894 (2d Cir. 2019) ("Federal courts have discretion to adopt such

---

(2000) (per curiam) (class of one); *see also Hu v. City of New York*, 927 F.3d 81, 93 (2d Cir. 2019) ("class of one" claim requires an "extremely high" degree of similarity between a plaintiff and comparator).  There is also a third type of equal-protection claim that involves allegations "that a facially neutral law or policy has been applied in an intentionally discriminatory . . . manner." *Pyke v. Cuomo*, 258 F.3d 107, 110 (2d Cir. 2001).  Because the Local Rule expressly distinguishes between repeat *pro se* litigants and others, this type of equal-protection claim is not cognizable here.

rules as are necessary to carry out the business of the courts."); *Monahan v. N.Y.C. Dep't of Corrs.*, 214 F.3d 275, 292 (2d Cir.), *cert. denied*, 531 U.S. 1035 (2000) ("A district court has the discretion to adopt local rules that are necessary to carry out the conduct of its business.").  There are few rules more integral to the conduct of a court's business than the rules with respect to the assignment of cases.  Moreover, "[t]here is no statute that requires random assignment."  *Obert v. Republic W. Ins. Co.*, 190 F. Supp. 2d 279, 290 (D.R.I. 2002).

Accordingly, this Court has long held that "due process does not accord . . . a right to have a judge assigned to [a] case on a random basis," nor does it imbue a litigant with the "right to determine the manner in which his case is assigned to a judge."  *U.S. ex rel Monty v. McQuillan*, 385 F. Supp. 1308, 1310 (E.D.N.Y. 1974); *Kaufman*, 2005 WL 1923561, at *3. Litigants have the right to an impartial judge, *see Concrete Pipe & Prods., of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 617 (1993), but "a party has no due process right to random case assignment," *In re Marshall*, 721 F.3d 1032, 1040 (9th Cir. 2013); *United States v. Sotolongo*, 2014 WL 793327, at *2 (M.D. Fla. Feb. 27, 2014); *see Bd. of Sch. Dirs. of City of Milwaukee v. Wisconsin*, 102 F.R.D. 596, 598 (E.D. Wis. 1984) ("The assignment of cases does not give or deny any litigant any due process rights."); *United States v. Helring*, 2024 WL 218119, at *3 (M.D. Pa. Jan. 19, 2024) ("A non-randomly assigned judge, without more, simply does not make for a due process violation."); *Kelly v. Herrell*, 2022 WL 17851675, at *3 (7th Cir. Dec. 22, 2022) (rejecting litigant's "protestations about the nonrandom assignment of the district judge" on the grounds that the case assignment process was governed by the court's administrative order and the litigant did "not demonstrate that this was improper or that he has a right to a random assignment"); *Firishchak v. Holder*, 636 F.3d 305, 309–10 (7th Cir. 2011), *cert. denied*, 565 U.S. 1201 (2012) (explaining that while the Due Process Clause "guarantees

the right to an impartial decisionmaker," it does not guarantee a right "to a particular judge");

*McLilly v. Stewart*, 2021 WL 3633566, at \*8 (E.D. Mich. Aug. 17, 2021), *aff'd*, 2023 WL 21145

(6th Cir. Jan. 3, 2023) (same).

Nor is random assignment a necessary component of a judge's impartiality.  *See*

*Francolino*, 365 F.3d at 141 (impartiality required by Due Process Clause "does not depend on

the manner in which [the judge] was selected").  There are well-established exceptions to the

general practice of random assignment, including assigning related matters to the same judge.

*See, e.g.*, III Guide to Judiciary Policies and Procedures: Judges Manual, Sec. A, Ch. IV, 5–6

(1999) ("Many courts have also implemented special procedures . . . for assuring that related

cases are all assigned to the same judge."); *Kaufman*, 2005 WL 1923561, at \*4 ("[T]he allocation

of judges to related cases for the sake of judicial efficiency is a common and accepted

practice.").  And cases that are remanded to the district court after an appeal generally are not

randomly assigned.

## III.    Substantive Due Process

Substantive due process rights safeguard persons "against the government's 'exercise of

power without any reasonable justification in the service of a legitimate governmental

objective.'"  *Tenenbaum v. Williams*, 193 F.3d 581, 600 (2d Cir. 1999), *cert. denied*, 529 U.S.

1098 (2000) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).

A court assessing a substantive due process claim performs a two-step analysis.  *Hurd v.*

*Fredenburgh*, 984 F.3d 1075, 1087 (2d Cir.), *cert. denied*, 142 S. Ct. 109 (2021); *Maniscalco v.*

*N.Y.C. Dep't of Educ.*, 563 F. Supp. 3d 33, 38 (E.D.N.Y. 2021).  "The first step in substantive

due process analysis is to identify the constitutional right at stake."  *Lowrance v. Achtyl*, 20 F.3d

529, 537 (2d Cir. 1994).  The second step asks whether "the state action was 'so egregious, so

outrageous, that it may fairly be said to shock the contemporary conscience,'" *Southerland v.*

*City of New York*, 680 F.3d 127, 152 (2d Cir. 2012), *cert. denied*, 568 U.S. 1150 (2013) (quoting

*Okin v. Village of Cornwall-On Hudson Police Dep't*, 577 F.3d 415, 431 (2d Cir. 2009)), such

that "the Due Process Clause would not countenance it even were it accompanied by full

procedural protection," *Anthony v. City of New York*, 339 F.3d 129, 143 (2d Cir. 2003) (quoting

*Tenenbaum*, 193 F.3d at 600).

      As noted *supra*, the Constitution guarantees a right of access to the courts.  *See*

*Christopher*, 536 U.S. 403.  However, Plaintiff's claim fails at the second step because he fails to

allege conduct that shocks the conscience, and thus his claim must be dismissed.  *See, e.g.*,

*Emmerling v. Town of Richmond*, 434 F. App'x 10, 12 (2d Cir. 2011) (summary order)

(affirming dismissal with prejudice of a substantive due process claim when plaintiff "failed to

allege any behavior . . . that could reasonably be considered egregious, outrageous, or

conscience-shocking"); *White v. City of New York*, 206 F. Supp. 3d 920, 936 (S.D.N.Y. 2016)

(dismissing with prejudice a substantive due process claim where the complaint "fail[ed] to

allege conduct that shocks the conscience"); *Dellutri v. Village of Elmsford*, 895 F. Supp. 2d 555,

574 (S.D.N.Y.2012) (dismissing with prejudice a claim where "[t]he conduct alleged by Plaintiff

simply does not rise to the level of being so outrageous as to violate Plaintiff's substantive due

process right").  The Local Rule simply cannot be characterized as "arbitrary, or conscience-

shocking, or oppressive in a constitutional sense."  *Lewis*, 523 U.S. at 847 (quoting *Collins v.*

*Harker Heights*, 503 U.S. 115, 128 (1992)).  Plaintiff himself notes, the Eastern District is not

the only court that links subsequent *pro se* complaints to the judge who decided the *pro se's*

action—several other courts have the same or similar rules as the Eastern District.  *Cf. Medley v.*

*Garland*, 71 F.4th 35, 49 (2d Cir. 2023) (noting that conscience-shocking or egregious conduct

"is, by definition, 'extreme, rare, and obvious'" (quoting *Maldonado v. Holder*, 763 F.3d 155,

165 (2d Cir. 2014))).  Different courts may adopt different rules for different types of cases.  There are rational reasons for the Eastern District of New York's rule.  Substantive due process does not protect against government action that a plaintiff believes is incorrect or ill-advised.  *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995).  And the Eastern District, like all other federal courts, is permitted by statute to make rules regarding case assignment.  Moreover, the Local Rule concerns "the allocation of limited resources," including the court's time and "the balancing of competing concerns," including the management of other cases, and thus falls outside the bounds of the protection that substantive due process.  *See, e.g.*, *Robischung-Walsh v. Nassau Cnty. Police Dep't*, 421 F. App'x 38, 41 (2d Cir. 2011) (summary order); *see also Ramos-Pinero v. Puerto Rico*, 453 F.3d 48, 54 (1st Cir. 2006) ("Even where the government is aware of specific dangers, . . . it must perform a triage among competing demands.").  Where courts have found that a judge's conduct deprived a party of due process, the cases have involved egregious interference by the judge with attempts of the losing party to present its case at trial.  *See S. Pac. Commc'ns Co. v. Am. Tel. & Tel. Co.*, 740 F.2d 980, 996 (D.C. Cir. 1984) (collecting cases).  Defendant's conduct with respect to the administrative matter of the Local Rule cannot be said to rise to that level.

In addition to alleging that the Local Rule itself infringes on his substantive due process rights, Plaintiff appears to allege that Defendant's conduct was negligent.  *See* Dkt. No. 1 ¶ 7 (characterizing Defendant's conduct as "disdainful disregard of [Plaintiff's] clear respectful demands").  Even if such a challenge to Defendant's past conduct were not barred by the doctrine of absolute judicial immunity, "[c]ommon negligence is categorically insufficient to shock the conscience, so [a plaintiff] must raise an inference that [the defendant] acted maliciously before [the defendant's action] can even begin to support a violation of substantive

due process." *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 276 (2d Cir. 2011); *see also O'Connor v. Pierson*, 426 F.3d 187, 203 (2d Cir. 2005).  To the extent that this allegation is meant to be one of deliberate indifference, it also fails because Plaintiff has not pled facts supporting a showing of a willful disregard of the obvious risks, serious implications, and likelihood of harm.  *Okin*, 577 F.3d at 432; *Spring v. Allegany-Limestone Cent. Sch. Dist.*, 655 F. App'x 25, 28 (2d Cir. 2016).  Accordingly, Plaintiff fails to state a substantive due process claim.

## CONCLUSION

The motion dismiss is GRANTED.  Because amendment would be futile, the case is dismissed with prejudice.  *See, e.g.*, *Lamb v. Cuomo*, 698 F. App'x 1, 2 (2d Cir. 2017) (summary order) ("District courts should generally not dismiss a *pro se* complaint without permitting at least one opportunity to amend, but granting leave to amend is not necessary when it would be futile." (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000))).

The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Dated: April 11, 2024
       New York, New York                    _____
                                                    LEWIS J. LIMAN
                                              United States District Judge

23